Good morning, everyone. Today, this morning, the Court of Appeals for the Third Circuit sits en banc in two matters. We will commence by hearing oral argument in Pellegrino and Waldman v. the United States of America. As per our practice, counsel will each have five minutes of uninterrupted time for argument, followed then by questions by the en banc court. Court, Paul Thompson on behalf of the petitioners. Good morning, Mr. Thompson. I'd like to reserve three minutes of my time for rebuttal, please. The difference between the petitioners and the government's reading of Section 2680H of the Federal Tort Crimes Act is really the difference between what the statute says and what the government wants it to say. This morning, I intend to show first that the language of Section 2680H is clear and unambiguous. Second, the transportation security officers, the men and women who search your person, your bags, who pat you down when you go through airport security are, quote, officers of the United States empowered by law to execute searches, end quote. And finally, that the government's alternative reading of this provision actually would change the statute in material and ultimately problematic ways. So first, I'll begin with the language of the statute. Section 2680H waives the government's immunity from suit for certain intentional torts committed by investigative or law enforcement officers. It then defines that term. It has its own definition as, quote, any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of federal law. Now, the Supreme Court in Millbrook interpreted this same section and held that it was clear and unambiguous. And now, Millbrook did not deal with the issue before the court today. But in Ali versus Federal Bureau of Prisons, the court did interpret a similar phrase, any other law enforcement officer, and held that that was clear and unambiguous and that it had, quote, expansive reach, end quote. I think with Millbrook and Ali, there are a couple of principles that come out. One, that the language here is clear. Two, that there's no need for legislative history or canons of construction even to get there. And three, that the court in recent Federal Tort Claims Act in this provision and a similar provision refused to place atextual limitations on the reach of the statute. Second, transportation security officers fall within this clear language. The language of the statute requires you have an officer of the United States who is then empowered by law to do one of three things. Well, transportation security officers are officers. They were actually reclassified as officers by the agency in 2005. They wear badges that say, Officer of the United States. And by the ordinary meaning of the term officer in our briefs, we cite Black's Law Dictionary and also Webster's for this principle, they are officers. And let me stress two things that make them different than ordinary employees. And Black's notes both of these. One, an officer's duties and qualifications are prescribed by law. Here we have a statute, 49 U.S.C. 44901. It actually sets forth the duties that transportation security officers have to undertake in the airports. Second, an officer has a job of greater importance. This court recognized in Vanderklok that what transportation security officers do is vitally important to the national security of the United States. And in addition, they have significant trust and authority in that they search over 800 million passengers in our airports every year. Second, transportation security officers are empowered by law to execute searches. The statute that empowers them is 49 U.S.C. 44901. And this court has already held in both Hartwell and in George that what they do is a search. Now, the government would put a criminal or a traditional law enforcement limitation on this provision. But we would suggest doing so is problematic for several reasons. First, the words criminal or traditional law enforcement officer appear nowhere in this statute. Second, it would actually change certain words in the statute. The statute applies to any officer of the United States. And we submit that a criminal or traditional law enforcement limitation would turn that any officer to criminal law enforcement officer. Second, the statute's in the disjunctive. Search, seize, or arrest, one of three. And yet the traditional criminal law enforcement officers that the government is appointed to already have all three powers. They're FBI agents, they're DEA agents. They search, they seize, and they arrest. So the government's interpretation would either make the last clause, superfluous, or it would change the or to an and. When Congress passed this law, it was focused like a laser beam on providing a remedy for those who were the victims of intentional torts committed by government officials with the power to search. We submit that transportation security officers fall within reach of the statute, and we would ask this court, therefore, to reverse. Let me jump in here now, Mr. Thompson. And as a starting point for me in what I'm finding to be a very difficult interpretive question, structurally the law enforcement proviso is an exception to an exception. And the FTCA's waiver of sovereign immunity generally is very broad, and I think everyone would agree on that. Exceptions to the FTCA are to be construed narrowly. So how do we interpret an exception to an exception? Broadly, to be consistent with the overall purpose of the FTCA, the overall waiver under FTCA, or is it a narrow exception to an already narrow exception? We would suggest that you interpret it broadly in keeping with the overall broad waiver of the FTCA, and one case we cited for that principle is Dolan. And here's the reason, because ultimately what this provision does is create a right to sue when certain intentional torts are committed. So in keeping with the broad waiver here, we would suggest that it be read broadly.  I think the language here is clear and unambiguous, and even if the court were to read this language straight up, I think we would still win. So ultimately, whether the court construes it broadly or construes it just straight up, I think we would still win in this case. You had stated that the statute talks about officers who execute searches, end quote. But, of course, the statute goes on to, it's not just execute searches, seizing evidence, and conducting arrests, but doing so for violations of federal law. TSOs, under the statute, perform a screening function, and screening function is defined in the regulations as inspection of individuals and property, not for violations of federal law, but, quote, for weapons, explosives, and incendiaries. So can we really equate the execution of a search for suspected violation of the law with a suspicionless screening for the removal of prohibited items? I think we can. 49 U.S.C., which is the provision that that statute has, also has criminal provisions, and you say weapons, incendiary devices, explosives. It is a crime to take one of those into the airport. That's 49 U.S.C. 46505. They are also looking for threats to the United States, such as air piracy or terrorism. That is also a crime, taking, that's 49 U.S.C. 46502. Hazardous materials, taking those into the airports, 49 U.S.C. 46312, that is a crime. And as these regulations provide and as their standard operating procedures provide, that's what the TSOs are looking for, threats to the United States that are also criminal. And I would also say that that last clause, violations of federal law, doesn't say violations of criminal law, and even though there certainly are criminal statutes that are operative here that the TSOs are looking for, but the TSOs also have civil enforcement authority, and they can fine individuals for violations of bringing improper items onto an airplane, and they can take up to $13,000. There could be civil enforcement authority there, too. But doesn't that drive home what the nature of the violations of federal law is? Because is there any type of violations of federal law for which one could conduct arrests without being criminal law? Well, I think the arrest piece clearly in the statute suggests to me that there's a criminal component there. What about for violations of federal law? Are there types of federal law that you could be arrested for and that is not criminal? Not that I'm aware of, but if you were to read it as search for violations of federal law, certainly they are searching for things that not only violate the criminal laws, but also that violate civil, have civil enforcement. Counselor, I'm surprised you necessarily connected up the searches. Under the canon of last antecedent, is it clear that for violations of federal law extends to all three items in the list or just the last item in the list? It is, and we argue that in our brief, and it's actually not clear. And I was just trying to address the question directly, but under the canon of the last antecedent, no, that would just apply to arrest, and we cite the Lockhart case for that principle, which is actually a case when you read on its face, you might seem surprised, but the canon actually applied in that way. But the same logic of Lockhart, I would suggest, could apply in this case, so that the violations of federal law provision there would just apply to arrest and not to search. That being said, to address Judge Krause's question directly, we do think there are federal criminal provisions and federal civil provisions that are implicated by what they're searching for as well. Does our analysis in George v. Real assist at all in that line as to whether or not this is limited only to criminal law enforcement types of searches? I think it helps a great deal. So George holds that what they're doing is a search. The TSOs in George were actually members of the… But it could be an administrative search. They held it was an administrative search, but the officers, the TSOs in George, were actually members of a joint terrorism task force. And in George, as you recall in the opinion, there came a point where the search for guns and for weapons seemed to have dissipated and the only issue they had were these cards they were looking at. And the court specifically there said, but the search could nonetheless continue because there was continued inquiry that had to happen, and it cited Terry v. Ohio for that principle. And I think that's important because if you think of the word search, that is in this statute. I'm sorry. So are you saying by linking that to Terry, are you taking it back to the criminal world? Not necessarily. I think if you look at the word search at the time this statute was passed in 1974 and then indeed in 2001 when the authority was given to TSOs to search, it had a common ordinary meaning. It was a government intrusion into… Sure does. Then no doubt about that. But there are administrative searches. You don't seem to dispute that. The question that seems to be a point of contention here is not, is this a search or is it not a search? It's, is this the kind of search that the law enforcement provisor was meant to reach? So under your theory or your approach to this case, every meat inspector who's employed by the U.S. Department of Agriculture, every ocean inspector who goes onto a property, anybody conducting any kind of administrative search is a law enforcement officer subject to the law enforcement proviso, right? So let me try to answer that this way. Administrative searches, we would contend, fall within the meaning of search under this provision. They're all covered, right? It would depend on what their statutory authorization is, if they are authorized to do that, and then it would also depend, I think, on whether they are officers, on whether or not it would cover those people in those cases. That answer surprises me. Why wouldn't it depend on the nature of the search? There's a difference between a personal kind of search that you get where you expose yourself to something which is tantamount to a pat-down when you go into the airport, as opposed to an OSHA search, a mining search that we had in Moscow. Those are very, very different kinds of searches in terms of the license intrusion upon the person, the individual of the person. They certainly are. Why would you equate the two? They certainly are. I think the term search can encompass a lot there, but there are absolute distinctions between the OSHA search and the mine search, for instance, and the search. Your assertion is search means search, and that's it, period. Those are all searches. They're all administrative searches. So in your textualist view of this, where do you find a distinction between a meat inspector and a TSO? They're both conducting administrative searches. Yeah, it would depend on what's empowered by law. So in George, the court held that these searches here, that there was statutory authority for them, and that they were not ultimately something you could leave. If the search that's being conducted is one that's just completely consensual, an argument could be made that there's no legal empowerment for it. You're just asking for the consent. Now, let me just answer your question more directly on one point, though. However, if a government officer engages in a search of your business or your person and commits an intentional tort against you, assaults you, or runs up a false arrest report, I think that ultimately, in terms of the keeping of the sense of this statute, that that's where Congress is focused like a laser beam on. Now, I don't think those other issues are before us. Are you saying, then, that the demarcation line is consensual or not consensual in terms of the search? No, I was just trying to make an argument. I was trying to make a justification of how those may be different. I know they're not before us. I think the term search is clear. I think the term search included, at this time, both Terry stops. It included administrative searches as well. There could be an argument down the road, if you had a search that was purely consensual, that ultimately it wasn't a search that was empowered by law. So for our purposes, is there some limiting principle here? I think there is a limiting principle. One, I think you have a clear statutory authorization here. I think George and Hartwell say this is not something you can get out of. So ultimately, it's not something that's consensual. I think there's an ultimate personal nature to this search that's very different with the pat-downs in the airports. How about for a rule we can apply in other cases, though? Is there a limiting principle for that? I understand the facts in this case. No, I think the empowered by law is an issue that you're going to need to look at in other cases. So some of the regulatory searches that take place are completely based on consent. And this is not one, ultimately, that's based on consent. This is a search that once you're in, George and Hartwell say, you cannot get out of. So you are drawing the line at consensual. I mean, you said a minute ago you're not, but it sounds like that's the limiting principle you're suggesting to us makes a TSO search different from these other searches, other types of administrative searches. I think it makes them significantly different. And I think it makes them different about whether or not they are ultimately empowered by law. I think the term search does encompass all kinds of searches, including administrative searches. I think the term empowered by law requires some kind of statutory directive to engage in that. Let Judge Ambrose get in here, please. Might a possible limiting principle be for regulatory or administrative searches, there are regulatory searches, which are, for example, mine inspections, things like that. And then there are checkpoint searches, like ports of entry coming into the country for an ISA agent, INS agent, a DUI, as we had in the Edmund case, for the Supreme Court, and airports. Correct. That's an absolutely sound limiting principle, and it's based on the case law, but this is akin to checkpoint searches. So in that case, you would be asking us to overrule George V. Reihel and Hartwell and to break from those circuits that have held that checkpoint searches are administrative searches, like the 9th and 11th and other circuits. Oh, no, I don't think you have to overrule anything in order to rule in our favor in this case. But we have held that checkpoint searches, including the very TSA searches at issue here, are administrative searches up to and including, as we described in George V. Reihel, a brief detention. Right, pat down and brief detention, we said was the outer limits of an administrative search. So you would have us either revisit that or you would have us overrule MATSCO to the extent we held there that the proviso does not extend to administrative searches. Are those our two choices? No, I don't think so. You don't have to overrule George and Hartwell. In fact, they're supportive here because they hold that these are searches. The line that Judge Ambrose drew is a very good one because they are searches. In fact, they have cited those checkpoint cases in George and Hartwell. They're akin to that. In terms of MATSCO, I think MATSCO is ultimately not a problem for several reasons. Reason number one is that the fundamental holding of MATSCO was relying on Pooler, which was ultimately overruled by the Supreme Court in Millbrook. Second, MATSCO had an alternative holding was that the officer or the employee was acting outside of the scope of his employment. And that alternative holding was enough to sustain that case. Finally, the last part where they just say employees of administrative agencies. On the one hand, it's really not a disputed statement because this statute applies to officers. And so to the extent MATSCO was relying on employees of administrative agency, this court wouldn't have to overrule it at all. All it would have to do is hold in this case that this is an officer of the TSA who's empowered by law to execute searches. So are you drawing a distinction between employees and officers? Yes, we are. And how do you reconcile for your argument Section 114? Because Section 114 talks about law enforcement officers, which these screeners do not. It does, correct. So how do you get around that? So this statute provides its own definition. It says for the purpose of this subsection. The section you're speaking of is? Section 2688, I'm sorry. It says investigative or law enforcement officer means any officer. And then it goes on. Section 114P is a provision that provides for law enforcement officers alone under the TSA. The TSOs are not law enforcement officers under that provision. But that provision is underinclusive. It's not a definition of investigative or law enforcement officer, which we know this provision is. It's not a definition of any officer, which we know 2688 applies to as well. So even though they're not law enforcement officers under 114P, we don't think that's dispositive because we still need to determine whether they fall under the definition here. But you relied before when you were describing their positions as officers because it was in their title. Yeah. Is that really the test? Because special agents, inspectors, they don't have that word? They don't have that title, yeah. So how are we to define officers from your point of view for the purposes of the provision? So we looked at the ordinary definition of officer at the time that this was passed. It was a person in a position of trust and authority. A position who has greater importance in their job than an ordinary employee. And Blacks has another distinction in there, which is someone whose duties are actually prescribed by law. Of the hundreds of thousands of government employees, few of them have their duties actually prescribed by a statute, which TSOs do. In addition, I think the title matters because it is a recognition of what their agency thinks of them in terms of stature. Just as the agency could designate them law enforcement officers under 114P, it designated them as officers here and had the government come in today and said, we think they're officers. This court likely would have moved past that issue and looked at the other issues in this case. But the fact that the government did that back in 2005, did it administratively, did it under oath before Congress, somehow has created an issue here. So I think it's important. I think it's important from a legal perspective. I think it's important from a factual perspective. Ultimately, this court decides what an officer is, but I think that's a very important factor that the court should take into account. So a federal food inspector or an OSHA inspector would qualify in your view. Is that correct? They would qualify if they were officers of the United States who are empowered to execute searches. And so it would depend. I would want to see the statutory provision that provides for what they're supposed to do and how their designated title lies and what their level of importance is within the organization. However, if they were officers and what they were doing were not just pure consensual, but actually you couldn't leave or there was some other indicia that the search was, you know, more like akin to a checkpoint search like we have here, I think they definitely would fall. We made the point in both Hartwell and George V. Rahill that part of the reason this constitutes an administrative search is that the public is on notice. They're on notice well before they come to an airport, that every person who comes to an airport is subjecting themselves to a screening search. So I understand you're focusing on consensual as in once you're in the midst of that search. We said once you're there in the screening process, they can finish the screening. But if you're looking at whether this is consensual, how is a choice to go to the airport and subject yourself to screening any less consensual than running a business where you are agreeing that SEC auditors are going to come in or a chemical plant where you understand that there's going to be administrative searches and people coming into the workplace? Well, I think one distinction is the one George and Hartwell actually drew, which they said ultimately these are not, even though everybody flies, even though there's notice, these are not ultimately turning on consent. They're turning on something else. Our point was not that they are or are not consensual. The point was that their validity under the Fourth Amendment didn't turn on it being consensual because it was an administrative search. And the nature of an administrative search is what rendered it constitutional, not consent. Wasn't that what we were holding there and in Hartwell? Yeah, I think that's right, that why they were valid under the Fourth Amendment is because ultimately there was an administrative justification in this quest for guns and for explosives and to protect the security of the United States was an important rationale, much like a checkpoint search or much like the DUI sobriety search that justified it. But the consent rationale there is important. And it is important because it goes to the essence of what they do in the airport. If consent was something that could be triggered to undermine this as a search or as justification, what George and Hartwell seemed to indicate is it could threaten the security apparatus that's actually been set up. You seem to be avoiding the central point, which I think Judge Krause is getting at and I'd like you to get at. She has noted that your consent is I'm going to get on a plane and I'm going to go to the airport. That's where you have the option. Once you're there, you're in the midst of the screening and something suspicious arises. You may not have the opportunity to walk away, but neither does somebody have an opportunity to say in the midst of a meat inspection, wait a second, now that you've found a problem with the hygiene here, get out. That's not consensual. Once you've found a problem in the mind, get out. That isn't how it works, so I'm having difficulty following your consent argument because it seems to me in all administrative search contexts, once you're in the middle of the search and a problem arises, people don't have the option to say I cease my consent, get out. The search is underway and it happens, so how does this work? How does this consent argument of yours work? Well, I'm actually in terms of administrative searches. I'm not actually sure that that's completely correct, so you'll have some statutes like the OSHA statute, which is 29 U.S.C. 657, that looks like it's an administrative. If you think in the middle of an SEC audit, somebody can step in and say, you know what? It's all good. Get out. We're just going to carry on as we have before, but we don't want you looking at our books right now. You think that's an option? Well, it's going to depend on the statutory scheme, so what I was going to say under OSHA, which is one statute that's provided, that's a statute that the Supreme Court ultimately held in Marshall v. Barlow's that actually you could say no and require OSHA to go get a warrant in that instance, an administrative warrant in that instance. So it's tough to say you'd have to look at the regulatory scheme. My only point here is that each of these cases is going to be unique. Each of these cases is going to have its own statutory authorization mechanism. Each of these individuals is going to have their own—I'm sorry. If that's true, then why shouldn't we be paying close attention to what Judge Schwartz was pointing you to, which is in the TSA authorizing statute, the Congress made a distinction between law enforcement officers and ordinary employees and said TSA has the option to designate people and to give them a gun and to call them law enforcement officers. Why doesn't that constitute the dividing line that we should be paying attention to what Congress said in that authorizing statute? Because it's underinclusive. Because this statute applies to investigative or law enforcement officers and it defines it as any officer. That statute that you referred to just talks about law enforcement officers. It doesn't say anything about investigative officers. It doesn't say anything about any officer. Indeed, the administrator of the TSA did designate these individuals as officers in 2005. Thank you very much, Mr. Thompson. We'll have you back on rebuttal. Mr. Scherer. May it please the Court. Assistant United States Attorney Mark Scherer on behalf of Appleease. I have three brief points. First, 26 U.S.C. 26ADH is not meant to be a dragnet pulling in huge swatches of federal workers who perform any sort of screening, search, or investigation. Its law enforcement proviso is, in fact, an exception to an exception to an exception, which narrowly waives sovereign immunity only to permit some intentional tort claims for acts by federal criminal investigatory and law enforcement officers. Now, historically, federal law permitted no tort suits, no matter how credible, for acts or omissions by federal workers. And in 1947, Congress passed the FDCA to permit some tort claims, but in sections like 26ADH expressly excluded many torts, including in Section H, intentional torts. Congress did not add the law enforcement proviso to that section until 1974 in response to the highly publicized no-knock raids by narcotics agents conducted without warrants in Collinsville, Illinois, homes. Now, Congress's stated intent at that time in adding the law enforcement proviso was, therefore, first, to prevent future abuses of the statutory no-knock authority, and second, to provide a limited remedy for abusive and illegal raids like those conducted in Collinsville. In keeping with this historical context and congressional intent, the text of the proviso speaks directly to curtailing abuses by federal criminal law enforcement. It waives immunity only for assault, battery, false imprisonment, false arrest, abusive process, and malicious prosecution, those torts most commonly asserted in response to encounters with criminal law enforcement. It does not waive immunity for the other intentional torts of 26ADH, those excluded, such as libel, slander, misrepresentation, deceit, interference with contractual rights, things not associated with criminal law enforcement. It does not speak to all employees. It speaks only to officers of the United States. It further applies, and those officers are those that are imbued with independent authority and legal discretion. It further applies only to investigative or law enforcement officers, which it defines as those empowered by law, which, as we've talked about, means a specific statutory grant is required to execute searches, to seize evidence, or to make arrests for violations of federal law. Now, that's language that speaks to core criminal law enforcement. It's language that's found in statutes that grant authority to officers who enforce federal criminal laws. It is not found in the laws permitting administrative searches or regulatory inspections. Here, unlike trained law enforcement officers, such as FBI agents or postal inspectors, who are broadly empowered by statute with criminal law enforcement authority and discretion, GSA screeners conduct limited administrative searches for items prohibited on airplanes. Their limited duties, limited training, limited discretion, and limited authority fit neither the words nor the reason of the law enforcement proviso. Now, contrary to Pell's apparent arguments, there is no rule that an FDCA immunity waiver exception or an ambiguity should or must be construed in favor of finding a remedy for credible claims. The Supreme Court itself has declined to adopt such a rule. And yes, in cases like Dolan and Millbrook, the court has reversed cases finding no remedy. But it has, in other cases likewise, reversed cases that found a remedy. And it has affirmed cases finding no remedy. The Supreme Court has only said that courts must identify the circumstances within the words and reason of the exception, no less and no more. Third and finally, the run-ins that have been cited by Pallance and Amici are unfortunate. But the law enforcement proviso is not a safety valve to find or fashion a remedy for claims where Congress has not explicitly permitted them. By its nature, sovereign immunity precludes even credible claims based on the concerns that lawsuits could disrupt important governmental functions. Only Congress can waive the government's sovereign immunity, and notably the proposed amendment that was introduced following the panel's decision in this case shows that Congress is aware of this issue and knows how to change the law if it chooses to. But until Congress acts, the proviso does not create a cause of action against the government for the acts of TSA screeners. This court should therefore follow virtually every other court to address this issue and affirm the district court's findings in favor of the government. And with that, I welcome the court's questions. Mr. Scheer, is the law enforcement proviso ambiguous? Your Honor, we do not believe it is ambiguous in that it applies by its terms to what is clearly intended to be criminal law enforcement. What it includes, as the exception to the exception to the exception, clearly speaks to criminal law enforcement. The very requirement of a statute that empowers the type of duties that criminal law enforcement do, search, seize, and arrest, all point directly toward traditional criminal law enforcement. Certainly the courts, including the district court here, went to congressional intent, which we believe also supports it to the extent there's an ambiguity. We believe that congressional history and other sources certainly point to criminal law enforcement as being the reason within the words. The government contends that the term officer applies to those who exercise traditional law enforcement functions, right? That's the thrust of your argument. Yes. And Mr. Thompson made reference to this during his time. The statutory definition of officer employs the disjunctive. If Congress had used and rather than use or in the statute, wouldn't it have been much clearer that Congress was talking about individuals in traditional law enforcement roles, people executing searches, seizing evidence, making arrests? Your Honor, perhaps it would have been clearer, but I think ultimately it doesn't matter. Under Millbrook, we have to look to the status of the individual officer, not the act, not what they're doing. We have to see, does that officer have the ability to do one of those three things? And not all of them have all three duties. I will note that Bureau of Prisons officers under 18 U.S.C. 3050, that gives them the authority to arrest. They also do searches, but those are special needs searches in the prison context. That alone wouldn't get them there. The reason that Bureau of Prisons officers apply here is because 18 U.S.C. 3050 gives them the specific ability to arrest for violations of federal law. Certainly, if you look at 44901 on which appellants rely, that doesn't get you there. That gives the administrator the authority to make sure that screening is done. And we've talked a lot today about meat inspectors. I knew that was coming up. If you compare 44901 to 21 U.S.C. 606, that is the statute that allows for meat inspection. And that says the Secretary of Agriculture shall cause to be made by inspectors appointed for that purpose an examination and inspection of all meat food products prepared for commerce, and inspectors shall have access at all times, day and night, whether the establishment be operated or not to any part of the establishment. Compare that to 44901A on which appellants rely. They're very similar. We're talking about a high-level official of an agency who is given a certain amount of discretion to lower-level employees. Certainly, it's not given, in the cases such as FBI agents and the like, full authority, full criminal discretion, or any of those. Are you saying PSOs are not empowered by law to execute searches? They have a certain limited authority, Your Honor, to conduct screenings at airports for a person who dies. The police have limited authority to conduct searches, too. I mean, the fact that it's a limited authority to search doesn't help because no one yet has absolute authority to search. It's all limited by the Fourth Amendment and the cases surrounding it. So the fact that it's a limited authority to search, the same as the officer walking down Market Street has a limited authority to search. How does that help you? I think, Your Honor, again, we have to go back to what each individual officer can do. When we talk about Terry stops, TSA screeners aren't out conducting Terry stops. They don't have the ability to be reasonable. In George, that was a Terry stop. It wasn't a Terry stop. The detention was permitted under Terry. I believe it was permitted, Your Honor, because it fell under the broader administrative search doctrine. That was the reason for the search. But the detention that followed the search, the 15-minute detention, went beyond the initial investigation opening of the suitcase. That was there under Terry. It's in the opinion. Well, I think as Mr. Thompson mentioned, that case was a little bit different in terms of you had other employees who perhaps did have criminal law enforcement involved, which makes it a little bit more difficult to cleave away from Mrs. Pellegrino's case where you're talking just about a screener. Counselor, you've been asking us to look at the specifics of the statute. Now, you're talking about officers, but let's talk about that in searches. You say the MEAT statute says like this one, but the MEAT statute talks about doing inspections. What you quoted doesn't use the word search. The TSA Act 49 U.S.C. 44935 F1B, 4 and 5, speaks of doing physical searches of the person. Mightn't we, rather than distinguishing between administrative and criminal, distinguish between statutes that provide for doing searches and statutes that provide for doing inspections or screenings or something without using the term search that plugs into the 26 ADH? In answering that, keep in mind the search is, in one context, authorized of the person. The MEAT inspection statute authorizes the search of the product and the facility. Let me answer your question first, Judge McNeil. Well, we're doing it. I can answer Judge Beamer's question first. I want you to keep that in mind when you answer his question. Ultimately, there's no distinction. We have to look to what the statute for each individual officer is. If that inspection rises to the level of a Fourth Amendment search, then it's covered. I thought you told us we were supposed to look at the words of the statute. We have a statute here that says the words physical search of the person. Mightn't that be the line between TSA and MEAT inspectors? No, Your Honor, because there can be physical searches that still fall under the administrative search doctrine. Certainly, the Supreme Court in the Skinner case in 1989 said that you could take urine and breath samples from railway workers, and that's without any probable cause. And that was still, even though it's invasion of the person, that's still an administrative search. This court also in the 1980s said you could do that of jockeys chosen by law. My only concern, though, is the word administrative or traditional or criminal isn't in the statute. The word search is. So we might do cross-referencing based on search, but I think you're having to do some inferring here as to why administrative versus criminal is the line. I think ultimately looking, starting with search, is not the proper way to look at it under Milbrook. Milbrook says you don't start with the search, seizure, and arrest and work backwards. You start with what the status of the employee doing it is. What Milbrook said is you can't cut out FBI agents just because they sock somebody on the street and they're not actually conducting a search, seizure, or arrest. You have to look at what is that particular officer doing. So I think working backwards from the search can't get us to the right answer. So what's the status here? I'm sorry, Your Honor. What's their status? The TSA screener status. They are employees who have very limited discretion and limited ability. That is, a certain limited and narrow discretion passed from the TSA administrator to conduct screenings for prohibited items within the sterile area. You call them screeners, right? That's intentional. You don't want to call them officers, but they've been reclassified as officers. Should we ignore that? I think you should, Your Honor. I call them screeners because it's easier for me to get in trouble. Because it helps you. It does help me. Counsel, doesn't the statute call them screeners? The statute and throughout the regulations identifies them as, quote, screeners, close quote, and describes their legal function as, quote, a screening function, which is specifically defined. It does, Your Honor. And ultimately, again, officer has been pointed out. Post inspectors, covered. Many Bureau of Prisons employees who may not have certain titles, if they fall under 18 U.S.C. 3050 conducting arrest, they're absolutely covered because they're calling it a statute. The nomenclature doesn't get you there. The EAC investigative officer. I was going to say, what is an investigative officer? And this actually goes to Judge McKee's question. I think investigative officer. Can I just? I'm sorry, Joe. No, no, no. Joe, make sure he comes back to my question. Don't hijack his answer. First of all, he hijacked my question. We will see how difficult my job is here. I'm going to frame my question the way I'd like to, with deference to my friend. What does investigative officer encompass that is different than law enforcement officer? Ultimately, not a lot. I think Congress was intending to not include just your FBI agents. And this goes to Judge McKee's question, which I knew was coming, about the ATF cameras. Thank you. There is certainly within the criminal realm people who work and go conduct searches in furtherance of criminal investigations, such as, and I can talk about the Seventh Circuit if you like, but what they looked at there was. Well, give an example. Who would you identify as an investigative officer that's distinct from a law enforcement officer? I think there could be, depending on the statute, there could be employees who, again, may not have the ability to, let's say, arrest or to seize evidence, but they may be empowered to go out as part of a criminal investigation and to conduct searches, whether they're not quite inspections, they're not administrative inspections, but they're out there looking for evidence of criminal law. I think those would be considered, depending on what the statute says, and I honestly don't have a good example for you, Your Honor, but those could be criminal investigators. What about an ATF chemist? I know, Your Honor, the Seventh Circuit ultimately hasn't made a decision on that, but that was their concern, was that under the sort of ATF criminal statute, that a chemist who goes out to a scene, this isn't someone working at an airport or someone showing this is after the fact, a chemist who goes out is working with the ATF agents to search for evidence of whether explosives were used. And what the Seventh Circuit says is... But the chemist involved in the case didn't go to the scene. It was a traditional lab chemist. Correct. He didn't go to the scene. And ultimately, the Seventh Circuit has not yet decided, nor has the District Court, Your Honor, whether or not how broad that would be. But I think what the Seventh Circuit decided is, hey, under this statute, chemists, perhaps, more broadly. Again, not working backwards from whether that particular chemist went out and searched, but whether that chemist, under a broad reading of the ATF criminal statute, would have the authority to do it. Again, not whether that chemist was actually searching. Are you reading investigative or out-of-the-statute? When you say, I can't think of a single example, does that mean there isn't an example? And so the argument made by Mr. Thompson is a sound one, that the emphasis on law enforcement to the exclusion of investigative is effectively reading part of the law enforcement proviso out-of-the-statute. I don't think so, Your Honor, because I think when we're talking about investigative or law enforcement officers, we're still talking about traditional law enforcement, regardless of their role in the criminal enforcement. When you say law enforcement, is your point, are you using that synonymously at that point with criminal? That is to say, if I understood your argument a moment ago, you were saying that there are investigative officers, including the whole range of GS series that is involved in crime scene investigations, that participates in criminal searches and criminal prosecutions and criminal enforcement, but in fact doesn't themselves have power, for example, to arrest. I think it would depend, again, on the individual statutory authority that were prescribed to them. But we're not talking about a particular individual. We're talking about interpreting the statute. Does the term investigative or, is that superfluous, or is your point that there are categories of investigative officers who support law enforcement officers, but themselves don't have the same powers? For example, they assist in executing searches on the scene, but they are not empowered to conduct arrests. If, under Your Honor's hypothetical, you could have an investigative officer who had, or an investigator who had authority to search and to assist in that regard, I think they would be covered, even if they didn't have the ability to arrest themselves. You're telling me that you can't come up with an example. It's difficult, Your Honor. I think when Congress wrote the law, they were trying not just to put in sort of, you know, the agent who's actually knocking down the door. I think they were trying to say, okay, we know there are other people who aren't just agents, but whether or not there are particular individuals that have come up in that circumstance, I'm trying desperately to remember whether there is case law on that. I don't believe there has been. Let me ask you another way. In a search team, are there individuals who are part of a search team and executing a search warrant who themselves are not empowered to conduct arrests? I think there absolutely would be, Your Honor. There are certain assistants who wouldn't have their own statutory authority to conduct it. Again, it would depend on that particular employee's authority, that particular officer's authority. So going back to authority, Millbrook tells us that to evaluate if somebody is subject to a proviso, you look at, quote, the legal authority. Yes, Your Honor. Right? And the legal authority here is a statute that empowers individuals who are employed by the government to conduct searches that can become progressively more invasive based upon the information available to that individual. And then this individual is the TSO or the screener, whatever label you'd like to use, but we know which employee we're talking about. Doesn't that indicate that this is the type of search that the law enforcement proviso was concerned about? Because if we're going to look at the backdrop, the backdrop does abusive searches. The statute empowers these government employees to conduct searches. I'm using employees broadly to include officers, but people empowered by the government. How do you get around Millbrook's directive that we look at the legal authority, and the legal authority here is conduct a search? Because, Your Honor, 44-901 does not give that level of authority. Like I said, 44-901 is very similar to the meat inspector statute. If that's all we need, fine, but under Millbrook. How is that the same? Because one, as my colleague said, was an inspection, one is a search. One goes from a wand to a physical touch. How can you analogize the authority granted to those individuals at the airport to the meat inspector if we're supposed to look at legal authority? Both statutes provide legal authority directly to a high-ranking official in the government. It does not, unlike, say, the FBI agent, it does not give authority directly to that officer. It says the TSA administrator is responsible for ensuring that screening be done by an employee. And I will also note that employees don't even need to be the ones to screen. The 44-920 permits the administrator to use contractors. If any of Your Honors go to San Francisco International Airport, those are not employees screening you. Those are contractors. And then we go back to legal authority. What's the legal authority of the contractor versus the employee? There is a certain amount outside that statute of discretion and authority that the TSA administrator, excuse me, administrator has given to these employees and these contractors in order to fulfill his or her duty to ensure under the statute that screening is done. Now, Your Honor pointed to 114P. That's a very different game where it allows the administrator to provide full criminal law authority, enforcement authority to agents who conduct criminal law enforcement. But there's clearly this other group who performs these other duties that are searches, correct? There is a group of employees or contractors who screen, yes, Your Honor. Well, they don't just screen, sir, do they? They screen. They have authority to screen not only your luggage but subject you to an x-ray when you stand there like this, correct? Correct, Your Honor. And if they find something suspicious, they can seize it, correct? Not in the tradition. Let's not kid ourselves. They can take it from you, right? They're not going to let you keep your gun. Honestly, Your Honor, in some circumstances I understand that they, depending on what the state law is, they are certainly not going to let you take that gun through security and board an airplane with it. And they can detain you until maybe local police are called, right? Honestly, Your Honor, they do not have legal authority to detain you. They can certainly ask people to stay if they're with anything, but they are required to contact local law enforcement. You're free to leave. Really? I've never been in there. I'm free to leave. There are certainly other officers, including local law enforcement, things that are called that are the ones who have the authority to arrest, who have the authority to detain you. It is certainly once, and I will admit it, the line becomes clear. I still have difficulty in agreeing to arrest in that hypothetical, totally. But to Judge Mastropa's question, they can detain you. They're not going to let you walk away. Ultimately, Your Honor, they don't have the authority to keep you there. But you can't do it. They've got the authority. They can call local law enforcement or officers that have been under 14 days. Are there other TSA officers on site to whom they could make recourse? Yes, Your Honor, there are criminal law enforcement officers who can detain you who would be within the statute, who have those powers. They are required to be there. Am I not right? They are required to be there? Under the statute and regulation, yes, Your Honor, in these airports, including at SFO, where there are contractors, there are required to be TSA officers who are there to oversee them. Wasn't the plaintiff in this case held by these folks? I believe local law enforcement were called and held. Eventually. But she was detained by TSOs until local law enforcement got there, right? I believe there were other employees other than the screeners involved in this case as well, Your Honor. At the initial detention? I can't speak to the exact timeline because I don't remember it, but there were certainly more than just these, than certainly the named defendants who were involved. There were other TSOs, including local law enforcement, who got involved very quickly. What about in George? It was just the screeners, to use that term, who held the person until the Philadelphia police arrived. Some brief holdings, like 15 minutes, that the screeners held the person until the police arrived. Again, Your Honor, I would be remiss if I knew exactly when the line happened or not. My understanding is that in every one of these cases, the dictate is you contact local law enforcement or you contact law enforcement. But what happens until that person gets there, until law enforcement gets there? That's where we're getting at. Are you saying that the screener will contact law enforcement and hope that when the police officer gets there, when the agent gets there, they can find the passenger because they've gone on their way, they've called the Uber and they're on their way from the airport? Is that what you're suggesting? But does the person have to stay until the, quote, law enforcement officer arrives? I can certainly tell you, Your Honor, that the passenger would be asked and undoubtedly told that they need to remain. But are they being legally detained? I don't know, and I don't think they have that authority. That's an odd thing to say, especially in light of Georgia or Israel, where, as Judge McKee has pointed out, they were told to stay and they did, and this court held that that was, in effect, a Terry stop. I mean, how do you get around that? That's a holding of this court. Are you telling us that that's error and that we should, in dealing with this case, we've got to revisit that holding? I don't believe so, Your Honor. I mean, ultimately, we're talking about this sort of broader TSA. Georgia was an interesting case that involved a lot of different employees. I'm not sure why you're fighting on that ground. That's an odd place to plant your flag. But Judge Schwartz's point, I'm not sure you've ever fully addressed. I think she was asking, and I'd like to hear the answer to this, if the aim and object of the law enforcement proviso was to stop abusive searches, and administrative searches like this can be very invasive and cause extraordinary delay and distress. Why, how do we square that law enforcement proviso purpose with a ruling that says you're free to go? I mean, you can't, I'm sorry, not you're free to go. You, the officers, are free to walk away from this abusive situation. For purposes of this discussion, we have to accept the version of facts given by the plaintiff. This was an abusive search. How do we square that with Millbrook and the purpose of the law enforcement proviso? Well, I think, ultimately, the purpose of the enforcement proviso was to apply a remedy for a very narrow group of people, and TSA screeners are not in it. All right, but I think that gets back to the status, right? Is the record clear that these folks were reclassified from screeners to officers because of hiring issues and morale issues, or is there ambiguity in the record on that? I think those were the statements of the administrator. There was no legal change in their duties at all. That was a change there. But there's a titular change, and that titular change puts us directly into the statutory language of any officer, right? So why shouldn't we sort of simply conclude that when they did this reclassification for a business purpose, they perhaps were not cognizant of the fact that this might grab this entire class of people, formerly called screeners, now called officers, and bring them within the purview of this statute? And if Congress inadvertently made that mistake, then we read the statute as written, and then Congress can correct that mistake and immunize these people. Ultimately, the title change under Milberg shouldn't matter. What matters is what is that statute that gives that particular employee, officer, inspector, I can't even think of the agent, their authority. Certainly 44901 did not change when, if that's the statute that's relied on by appellants, that did not change when there was a change in nomenclature from screener to officer. That alone would not be enough under Milberg to change the statutory authority so as to put an employee back into 2680H. How do you respond to the notion that there's no remedy? Assuming an affirmance on your point, the argument on the other side is you leave us with no remedy. The Westfall Act, I suppose, is the answer. But is that really giving an aggrieved party a true remedy in this kind of situation? Your Honor, ultimately it's up to Congress to create a remedy. Since 1950, the Ferris Bar has precluded any remedy for very sympathetic plaintiffs for injuries arising out of military service. Congress has, the Supreme Court has upheld it time and time again, reversing this court's attempt in the 1980s to create a remedy by getting around it. They said, no, Ferris applies. There is no remedy until Congress creates it. That is a very sympathetic group of people who have no remedy, Bivens or otherwise. Ultimately, it's up to Congress, Your Honor. Which statute are we interpreting here? The Transportation Security Act or the Federal Tort Claims Act? The Federal Tort Claims Act, Your Honor. And so if the Federal Tort Claims Act gives an embedded definition, isn't that the one we look at? Yes, Your Honor, but under Millbrook, the empowered by law provision of that statute requires a separate statutory grant. Doesn't Millbrook say, be careful, don't narrow something, look at the actual words, and don't get too cute? Millbrook and Dillon both say, Your Honor, it has to be within the words and reason of the statute, no more and no less. But you're advocating a very narrow definition of officer when it says any officer. Yes, Your Honor. But aren't you reading any out of it then? No, because the context of the statute shows that we're talking about law enforcement officers. It's not in there. In your five minutes of uninterrupted presentation, you used criminal seven times, which is seven times more than Congress used that word in drafting the statute. It's not in there. You want us to put it in there, but it's just not there. It's in there, Your Honor, to the extent that. Show me where it is. I've got it right in front of me. Again, if you look at which intentional torts, not all of them, it's only waiving them for some of them. They're the ones that apply to criminal law enforcement. And that is exactly the kind of foreseeable event that, like the door breaking down, that you said gave rise to the statute to begin with, and I guess it was Colorado. The kind of encounter that occurs, the very personal, intimate encounter that occurs at the TSA screening facility, is exactly the kind of foreseeable situation that one would suggest Congress was trying to give a remedy for when you created this exception. You may answer the question if it was a question. Pretend it's a question. It'll make the Chief happy. I think the historical context and the text show that the words and the reason apply to traditional criminal law enforcement. We would ask that you, Your Honor. Thank you very much, Mr. Chair. Mr. Thompson, we'll have you back in rebuttal. Thank you. Thank you. Just a few brief points on the detention question. Ms. Pellegrino was detained for an hour. They took her identification. They took her bags. She was not free to touch either of those. She was detained by a TSO, a TSO labbie. And under the standard operating procedures of the TSA, Section 24, or 2.4, Open Parents 22, supervisory TSOs, which is what Ms. Labbie was, are allowed to manage incidents as they arise until there's the arrival of a police officer or a designated law enforcement officer. Including the collection of, I'm sorry. Your adversary has pointed out that airports can also bring in TSA resorts instead of TSA screeners, occasionally to contract screeners. And the statute provides that it can do the same for law enforcement officers by deputizing state and local law enforcement officers, right? So Congress has expressly provided in the ATSA, when it comes to the deputizing of state and local law enforcement officers, it has a provision under 49 U.S.C. 44.922, entitled Federal Tort Claims Act, that provides the state or local law enforcement officer who's deputized under this section is treated as, quote, an employee of the government, close quote, for purposes of the Tort Claims Act procedures, which include the proviso, while carrying out federal airport security duties within the course and scope of the officer's employment. So Congress has specifically authorized suits triggered by those officers in the text of the ATSA. Where has it done that for TSA screeners, including those who were brought in as contract screeners, where you'd think there would be a need to make a parallel provision? So I would say Congress has designated that TSOs can be sued under Section 2680H. In terms of the ATSA that you just identified, the point was when this screening actually started in 1973 and then Congress authorized it, the same Congress that actually passed this provision in public law in 93-366, it was state and local law enforcement in Section 316 of that act that actually carried it out. So when Congress decided to federalize all of the performance of these functions, there clearly was a recognition that there might be some instances when they can't federalize all of it. And this was a recognition of that and just wanted these people to be treated the same way in terms of liability against the government that any other officer of the United States performing this search function would be treated. We're trying to ascertain whether Congress in fact intended to waive sovereign immunity for this group of employers. They've explicitly done that for a group of officers in the text of the ATSA. Have they done that for screeners, TSA employees or contract employees anywhere in the ATSA? Well, they had to do that because 2680H applies to officer of the United States. So all this statute that you pointed to does is take these state and local or these contractors who are performing the same function because of unique circumstances and raise them up for purposes of liability against the federal government. It's the same status that any officer of the United States would have. Thank you. I see my time's up. Thank you. Thank you to counsel on both sides of this very interesting and very important case. Thank you for your very helpful briefing and arguments this morning. The en banc court will take the matter under advisement. I would ask the clerk to declare a brief recess before we move on to our second en banc for the day.